EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
JOSEPH B. WIDMAN
Assistant United States Attorney
Chief, Riverside Branch Office
NATHANIEL B. WALKER (Cal. Bar No. 224473)
Assistant United States Attorney
Riverside Branch Office
    3403 10th Street, Suite 200
    Riverside, California 92501
    Telephone: (951) 276-6919
    Facsimile: (951) 276-6202
    E-mail:    nathaniel.walker@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| KENNETH WAYNE FROUDE, | No. CV 16-05353-JLS |
|---|---|
| Petitioner, | GOVERNMENT'S OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| LOUIS MILUSNIC, Warden, | |
| Respondent. | |

On behalf of the government of Canada, Louis Milusnic, Warden, by and through his counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Nathaniel B. Walker, hereby files this opposition to the petition for a writ of habeas corpus in the above-captioned matter.

///

///

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: October 3, 2016          Respectfully submitted,

EILEEN M. DECKER
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

JOSEPH B. WIDMAN
Assistant United States Attorney
Chief, Riverside Branch Office

           /s/
NATHANIEL B. WALKER
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

The government respectfully submits this memorandum in opposition to the petition filed by the fugitive-petitioner, KENNETH WAYNE FROUDE ("FROUDE"), for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. FROUDE seeks to challenge the Memorandum and Order of the Honorable Charles F. Eick, United States Magistrate Judge, dated June 16, 2016, granting the government's request pursuant to 18 U.S.C. § 3184 for a certification that the prerequisites for the extradition of FROUDE to Canada have been met. FROUDE does not dispute that there is a valid extradition treaty between the United States and Canada,[1] that the magistrate judge had jurisdiction to determine extraditability, or that he committed the acts of which Canada accuses him. Instead, FROUDE asserts that he has already completed his Canadian sentence, and that the offenses he committed under Canadian law are not covered by the Treaty because those offenses are not crimes in the United States. For the reasons set forth below, FROUDE's arguments are without merit, and the Court should deny his petition.

**II. PROCEDURAL HISTORY**

The United States filed its memorandum in support of extradition on March 14, 2016.[2] (Dkt. No. 19.) FROUDE filed his opposition on March 21, 2016. (Dkt. No. 20.) The United States filed its reply on

---

[1] Extradition Treaty Between the United States of America and Canada, 27 U.S.T. 983, TIAS 8237 ("the Treaty").

[2] The underlying extradition matter was captioned In the Matter of the Extradition of Kenneth Wayne Froude, a Fugitive From the Government of Canada, No. CV 15-08623-JLS(E). References to docket numbers herein, unless otherwise specified, are to the docket in the underlying extradition matter.

April 4, 2016.  (Dkt. No. 23.)  The Court heard oral argument on April 11, 2016, following which, the Court ordered supplemental briefing, which the United States filed on May 2, 2016.  (Dkt. No. 28.)  On June 17, 2016, Magistrate Judge Eick issued an order certifying extraditability on some, but not all, of the grounds urged by the United States.  (Dkt. No. 32.)  On July 19, 2016, FROUDE filed the instant petition challenging the certification.  On September 1, 2016, this Court ordered the government to file its opposition by October 3, 2016.

**III. ARGUMENT AND ANALYSIS**

    **A.   Applicable Standard of Review**

An order certifying a request for extradition is not a final judgment that is appealable under 28 U.S.C. § 1291.  See Spatola v. United States, 925 F.2d 615, 617 (2d Cir. 1991).  However, an individual subject to extradition may have his extradition order reviewed by seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  See Quinn v. Robinson, 783 F.2d 776 (9th Cir. 1986).  The parameters of habeas review of an extradition order are highly circumscribed.  See Hooker v. Klein, 573 F.2d 1360 (9th Cir. 1978); see also Shapiro v. Ferrandina, 478 F.2d 894, 901 (2d Cir. 1973)).  Habeas review by a district court is not a means of de novo rehearing what a magistrate judge presiding over an extradition hearing has already determined.  See Klein, 573 F.2d at 1364; see also Ahmad v. Wigen, 910 F.2d 1063, 1066 (2d Cir. 1990)).  "On collateral review by habeas corpus, a Court is not permitted to inquire beyond whether (1) the extradition judge had jurisdiction to conduct extradition proceedings; (2) the extradition court had jurisdiction over the fugitive; (3) the treaty of extradition was in full force and effect;

(4) the crime fell within terms of the treaty; and (5) there was competent legal evidence to support a finding of extraditability." Klein, 573 F.2d at 1368 (citing Fernandez v. Phillips, 268 U.S. 311 (1925)).

Here, FROUDE challenges only the magistrate judge's interpretation of the term "sentence" under the Treaty, and the magistrate judge's determination that dual criminality has been met. Specifically, FROUDE asserts that he may not be returned to Canada because: 1) he has already served his entire prison term, and therefore has no "sentence" remaining to serve; 2) absconding from the Community Correction Center ("CCC") where he was ordered to reside is not analogous to escape under 18 U.S.C. §§ 751(a) and 4082(a); and 3) leaving Canada without authorization is not analogous to Flight to Avoid custody or confinement under 18 U.S.C. § 1073.[3] (See Petition ("Pet.") at 4-6, 12-16.) As argued below, and as reasoned by the magistrate judge, FROUDE's assertions are incorrect, and his petition should be denied.

**B.  FROUDE Has Not Served His Entire Sentence and May Be Returned to Canada on That Basis**

FROUDE first argues that because he has already completed his Canadian prison term, no sentence remains for him to serve. (See Pet. at 4-6.) However, as Magistrate Judge Eick correctly ruled, FROUDE's "sentence" includes the ten-year LTSO to which he remains

---

[3] FROUDE also argues that dual criminality is not met with regard to his alleged failure to comply with other terms of his Long Term Supervision Order ("LTSO"). However, the magistrate judge only certified extradition with respect to the three grounds discussed herein. The United States does not contest FROUDE's arguments with which the magistrate judge agreed.

3

1  subject.⁴  Magistrate Judge Eick based the determination that
2  FROUDE's LTSO is part of his sentence, at least in part, on the
3  documents submitted by the Canadian government.⁵  (See Dkt. No. 32 at
4  26-27.)  The magistrate judge also determined, after an exhaustive
5  analysis of Canadian law, that the term "sentence" in the Treaty
6  includes an LTSO, because Canada's own Extradition Act addresses
7  "extradition of a person who has been sentenced to imprisonment <u>or</u>
8  <u>another deprivation of liberty</u>," and based on the mutual
9  understanding of the Treaty partners, as indicated by the past
10 performance of Canada in allowing extradition of individuals sought
11 by the United States "for completion of the service of probation or
12 supervised release."  (See Dkt. No. 32 at 27 (emphasis added).)

---

⁴ The United States initially argued that the Court should not become mired in the technicalities of the Canadian criminal process, because to do so would offend the principles of international comity and judicial modesty mandating the narrow scope of review in extradition proceedings.  (See, e.g., In re Extradition of Robertson, 2012 WL 5199152, at *10-11 (quoting Skaftouros v. United States, 667 F.3d 144, 156 (2d Cir. 2011)).)  Magistrate Judge Eick reframed the issue as one of pure treaty interpretation.  (See Dkt. No. 32 at 24-25.)  Either way, the result is the same: FROUDE may be returned to Canada to serve the remainder of his sentence.

⁵ As the United States has previously argued, under Canadian law, a sentence for a Long-Term Offender ("LTO") like FROUDE includes both a term of imprisonment and an order of supervision.  Canadian Criminal Code § 753.1(1) provides that if "the court finds an offender to be a long-term offender, it shall (a) impose a sentence for the offence for which the offender has been convicted . . . and (b) order the offender to be supervised in the community, for a period not exceeding ten years."  In this regard, Section 753.1 is "mandatory and conjunctive," which means that once an offender is found to be an LTO, "he or she must be subject to a term of imprisonment and a LTSO."  (See Dkt. No. 23 at 2-3.)  Here, the Canadian sentencing judge found that there was a substantial risk of re-offending based on FROUDE's multiple convictions for sexual assault.  Accordingly, FROUDE was sentenced to both a term of imprisonment and a ten-year LTSO.  Thus, the documents submitted by the Canadian government help establish that both the incarceration period and the LTSO, imposed at the same time, are part of FROUDE's sentence under Canadian law.

4

Thus, whether as a matter of pure treaty interpretation or based on the record in these proceedings, FROUDE's LTSO is part of his sentence, and he is extraditable on that basis.

### C. Dual Criminality is Satisfied on Multiple Grounds

FROUDE next argues that the Canadian offenses he committed are not within the Treaty, because his conduct would not be criminally punishable if it had occurred in the United States.[6] (See Pet. at 4-8, 8-17.) For the reasons articulated by the magistrate judge, and as argued below, dual criminality has been met on at least two bases, and the petition should be denied.

#### 1. Dual Criminality is Satisfied With Respect to 18 U.S.C. § 751

"Dual criminality exists if the essential character of the acts criminalized by the laws of each country are the same and the laws are substantially analogous." Manta v. Chertoff, 518 F.3d 1134, 1141 (9th Cir. 2008) (internal punctuation omitted). "The primary focus of dual criminality has always been on the conduct charged; the elements of the analogous offenses need not be identical." Emami v. U.S. Dist. Court, 834 F.2d 1444, 1450 (9th Cir. 1987).

---

[6] FROUDE appears to have conflated the concept of "dual criminality" with the "rule of specialty." (See Pet. at 11.) The principle of dual criminality requires that extraditable offenses be criminal in both Canada and the United States. (See, e.g., In re Extradition of Russell, 789 F.2d 801, 803 (9th Cir. 1986).) The doctrine of the rule of specialty, on the other hand, prohibits Canada from prosecuting FROUDE for offenses other than those for which he was extradited. (See, e.g., Kelly v. Griffin, 241 U.S. 6, 16 (1916).) In this regard, FROUDE's rule of specialty claim, if any, is not yet ripe because a final determination regarding his extradition, and the bases therefor, has not yet been made. (See, e.g., Zhenli Ye Gon v. Holt, 774 F.3d 207, 220 (4th Cir. 2014) (final decision whether to extradite fugitive rests with the Department of State).)

1    FROUDE's LTSO requires him, inter alia, to reside at a CCC
2 approved by the Correctional Service of Canada ("CSC").  As the
3 United States has previously argued, and as the magistrate judge
4 found, dual criminality under the Treaty exists between this
5 condition of the LTSO (as codified at Section 753.3(a) of the
6 Criminal Code of Canada) and 18 U.S.C. Sections 751(a) and 4082,
7 because the CSC is analogous to the United States Bureau of Prisons
8 ("BOP"), the CSC owned and operated the CCC from which FROUDE
9 escaped, and the residential condition of the LTSO was imposed by the
10 sentencing judge pursuant to a Canadian federal statute.  (See Dkt.
11 No. 23 at 6-7; Dkt. No. 32 at 32-33.)  Accordingly, both the Canadian
12 and U.S. statutes criminalize the same basic conduct (i.e., leaving
13 custody without permission) to prevent the same basic evil (i.e.,
14 allowing convicted felons to remain at large without any
15 supervision).  (See, e.g., United States v. Brown, 333 U.S. 18, 21
16 n.5 (1948) (discussing considerations that led to the adoption of the
17 escape statutes, including discouraging conduct that endangers the
18 welfare of the custodians and crimes that often follow an escape).)
19 The "essential character of the transaction is the same, and made
20 criminal" by the laws of both countries, Wright v. Henkel, 190 U.S.
21 40, 58 (1903), and this is all that is required to satisfy the dual
22 criminality requirement in an extradition proceeding.
23    Significantly, the magistrate judge found FROUDE's arguments
24 under United States v. Burke, 694 F.3d 1062 (9th Cir. 2012),
25 unpersuasive because the CSC is the equivalent of the U.S Attorney
26 General and the BOP.  (See Dkt. No. 32 at 30-33 (citing United States
27 v. Rocha-Leon, 187 F.3d 1157, 1159 (9th Cir. 1999)).)  The CSC owns
28 and operates the CCC from which FROUDE escaped, and that CCC is

6

1  subject to the CSC's policies and procedures.[7]  (See Dkt. No. 28 at
2  8-9.)  Accordingly, contrary to FROUDE's assertions, he was "in
3  custody" at the CCC, and moreover, was subject to conditions
4  analogous to court-ordered confinement in a U.S. halfway house.  A
5  parolee in the United States who had been ordered confined to a
6  halfway house, and who left that facility without permission and went
7  to Canada, would be subject to prosecution under 18 U.S.C. §§ 751 and
8  4082.  (United States v. Foster, 754 F.3d 1186, 1190 (10th Cir. 2014)
9  (escape from court-ordered placement in halfway house); see also
10 United States v. Jones, 569 F.2d 499, 500 (9th Cir. 1978)
11 (prosecution for escape also proper where parolee failed to return to
12 halfway house because arrested for new offense).)  Accordingly,
13 FROUDE is extraditable, and his petition should be denied.

      2.   <u>Dual Criminality is Also Satisfied with Respect to 18 U.S.C. § 1073</u>

Dual criminality also exists between the second condition of the LTSO – i.e., that FROUDE remain in Canada – and 18 U.S.C. § 1073, unlawful flight to avoid custody or confinement.  Where, as here, an

---

[7] The general conditions of confinement at the CCC at the time FROUDE escaped included the following: the residents were supervised twenty-four hours a day, seven days a week, all residents were counted and accounted for at least twice daily, sometimes at night, the residents' rooms were searched for contraband and unauthorized items on a daily basis, sometimes with an assistance of a canine squad, samples of residents' urine were collected and tested on a regular basis, and residents' arrivals and departures were routinely recorded. (See Dkt. No. 28 at 9.)  Also, no alcohol, drugs, weapons, or pornography was allowed at the facility.  (Id.)  In addition to the facility's general restrictions, residents' access to the outside community was determined on a case-by-case basis, by the risk to the community that each resident posed.  (Id.)  FROUDE's community access was "Restricted Community Access," meaning that FROUDE "had no unaccompanied community access." (Id.)  In this regard, FROUDE's assertion that he "could leave the facility, but would be checked upon daily -- just like the defendant in Burke," (Pet. at 13), is not supported by the record.

7

individual intentionally crosses an international border to avoid the restrictions placed upon him by a criminal court, such conduct would violate either Criminal Code of Canada § 753.3(a) or 18 U.S.C. § 1073. Section 1073 criminalizes, inter alia, "mov[ing] or travel[ing] in interstate or foreign commerce with intent . . . to avoid prosecution, or custody or confinement after conviction." Section 1073 covers not only pre-conviction flight, but like the Canadian LTSO, also covers post-conviction flight to avoid confinement. (See, e.g., United States v. Alcarez Camacho, 340 F.3d 794, 797 (9th Cir. 2003) (failure to appear for sentencing).) Furthermore, not only does § 1073 apply to criminal defendants (pre- and post-conviction), it also extends to witnesses who move in interstate or foreign commerce with intent to avoid giving testimony in criminal proceedings, as well as persons who do so to avoid service of process by a state agency. (See 18 U.S.C. § 1073.) Accordingly, the purpose of § 1073 is to address not only the threat to public safety posed by "roving criminals," United States v. Brandenburg, 144 F.3d 656, 660 (3d Cir. 1944), but also "the threat to the integrity and authority of the court posed by" persons who refuse "to abide by lawful court orders," Alcarez Camacho, 340 F.3d at 797 (internal citation and punctuation omitted). Thus, just like the Canadian statute, which criminalizes, inter alia, failure to remain in Canada in violation of a court-imposed LTSO, 18 U.S.C. § 1073 criminalizes foreign travel with intent to avoid custody or confinement,[8] or compliance with a court order. Therefore, dual

---

[8] Magistrate Judge Eick correctly found that FROUDE's history of repeated violations of the terms of his LTSO permits an inference that he left Canada with intent to avoid prosecution or confinement. (See Dkt. No. 32 at 34.)

8

criminality is satisfied under the Treaty because the Canadian statute punishes the same conduct and addresses the same purposes as § 1073.  (See Emami, 834 F.2d at 1450.)

**IV.  CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny FROUDE's petition in its entirety.