HILARY POTASHNER (Bar No. 167060)
Federal Public Defender
(E-mail: Hilary_Potashner@fd.org)
ASHFAQ CHOWDHURY (Bar No. 243763)
(E-Mail: Ron_Chowdhury@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-1456
Facsimile: (213) 894-0081

Attorneys for Petitioner
KENNETH WAYNE FROUDE

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| KENNETH WAYNE FROUDE, | NO. CV 16-5353-JLS |
|---|---|
| Petitioner, | **KENNETH WAYNE FROUDE'S REPLY IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS/APPEAL TO THE DISTRICT COURT PURSUANT TO 28 U.S.C. § 2241(c)(3) WITH REGARD TO THE COURT'S JUNE 17, 2016 ORDER CERTIFYING EXTRADITABILITY** |
| v. | |
| Louis Milusnic, Warden | |
| Respondent. | |

Kenneth Wayne Froude, by and through his attorney of record, Deputy Federal Public Defender Ashfaq G. Chowdhury, hereby submits his reply in support of his petition for a writ of habeas corpus proceeding/appeal pursuant to 28 U.S.C. § with regard to the Court's June 17, 2016 order certifying extraditability (Docket No. 32).

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

DATED: November 14, 2016      By _/s/ Ashfaq Chowdhury_
                                ASHFAQ CHOWDHURY
                                Deputy Federal Public Defender

## **MEMORANDUM**

## I. INTRODUCTION

Mr. Froude's Long-Term Supervision Order (LTSO) was not part of his "sentence," as that term is used in the U.S.-Canada Extradition Treaty (Treaty). Mr. Froude was also not "in custody" in Canada before coming to the U.S.

For these reasons, the Request for Extradition should be denied.

## II.  DISCUSSION

**A.   The LTSO Was Not Part of Mr. Froude's "Sentence"**

The definition of the Correctional Service Canada of a LTSO demonstrates that Canada does not view the LTSO as part of a defendant's sentence:

> Long-term supervision order: an order imposed by the court as a sentencing option to an offender designated as a Dangerous Offender pursuant to section 753 of the Criminal Code or as a Long-Term Offender pursuant to section 753.1 of the Criminal Code. The offender who has received such an order is supervised in accordance with the CCRA. The long-term supervision order commences when the offender has finished serving all sentences for offences for which he/she had been convicted. The period of supervision to which the offender is subject at any time must not total more than 10 years.

Correctional Service of Canada, Long-Term Supervision Orders, available at << http://www.csc-scc.gc.ca/politiques-et-lois/719-cd-eng.shtml#d3 >>, last visited November 14, 2016. By the CSC's own terms, "[t]he [LTSO] commences when the offender has finished serving all *sentences* for offenses for which he/she has been convicted." *Id.*

While it is true that the Magistrate Judge's order recited a long list of Canadian case law (Order, Docket No. 32, at 20-22), it appears that the majority of the authorities cited are from lower courts in Canada, while the authorities cited by Mr. Froude below (and again here on appeal) are from the Supreme Court of Canada and the Federal Court in Canada. *See* Canada Department of Justice, The Judicial Structure, available at << http://www.justice.gc.ca/eng/csj-sjc/just/07.html >>, last visited November 14,

1

2016. The clear statement in *McMurray v. National Parole Board*, 2004 FC 462 ¶ 25 (Fed. Ct. of Canada 2004) ("Long-term supervision does not form part of the offender's sentence"), does not appear to be explicitly countermanded by the various authorities cited in the Magistrate Judge's order. Specifically, it does not appear that any of the authorities cited in the Magistrate Judge's order refer to an LTSO as a "sentence"; rather, these various authorities appear to consider an LTSO as part of a set of "sentencing options."

The distinction may seem fine, but given that the Correctional Service of Canada itself appears to use "sentence" to refer to periods of imprisonment and not to LTSOs, *see supra*, it appears the more persuasive interpretation, in line with the explicit statement in *McMurray*, 2004 FC 462 ¶ 25, that an LTSO "does not form part of the offender's sentence."

Indeed, Canadian Criminal Code § 753.1(1) also supports this conclusion. As the government notes, Opposition, Docket No. 7, at 4 n. 5, that section provides that if "the court finds an offender to be a long-term offender, it shall (a) impose a sentence for the offence for which the offender has been convicted . . . and (b) order the offender to be supervised in the community, for a period not to exceed ten years." Even in the statutory text, the "impos[ition of] a sentence" and the "order[ing]" of an LTSO are two separate items. *Accord R v. L.M.,* 2008 SCC 31, ¶ 38 (Sup. Ct. Canada 2008) (noting that there exists a "distinction . . . between sentencing *per se* and the procedure for imposing a period of post-sentence supervision."

**B.     Mr. Froude Was Not "In Custody" When He Left Canada for the U.S.**

As noted in Mr. Froude's opening brief, the conditions of Mr. Froude's LTSO, which followed the completion of his sentence of incarceration, were not akin to "custody." Significantly, the LTSO was not imposed by a court or the Correctional Services of Canada, but by the Parole Board of Canada. Govt's Supplemental Brief at 8. Moreover, the LTSO conditions, as noted, are much more akin to the conditions of supervised release. An individual on supervised release is not "in custody." Even if

1 ordered into a halfway house during a period of supervised release, leaving the halfway
2 house would not be an "escape" for purposes of 18 U.S.C. § 751 – but simply a
3 violation of the terms of supervised release. Similar to the defendant in *United States v.*
4 *Burke*, 694 F.3d 1062, 1064-65 (9th Cir. 2012), "[h]e was not serving a prison sentence,
5 nor was he confined . . . under conditions equivalent to custodial incarceration."

Indeed, the situation in *Burke* is directly analogous. There, defendant was ordered – by the sentencing court – to reside in a reentry center for a period of time as part of his supervised release, after he had completed a sentence of incarceration. The Ninth Circuit concluded that though the defendant had left the reentry center prior to completing his required term there, he could not be properly charged with escape in violation of 18 U.S.C. § 751 because he was not "in custody." *Burke*, 694 F.3d at 1065. *Accord United States v. Pesina*, No. CR-05-6016-EFS, 2005 WL 215705, at * 3 (E.D.Wa. Sept. 8, 2005) ("[T]he Court finds a defendant is not in "custody" when he is confined in a half-way house as a condition of his supervised release. The Court finds this ruling consistent with the following principles: (1) a violation of supervised release is not a misdemeanor or conviction . . . , (2) the restrictions at a half-way house are significantly less than those at a "custodial" facility . . . , and (3) the purpose behind § 751(a) is to reduce the likelihood of escape from official custody, which often involves violent and menacing behavior, creating a risk to the guards and custodians . . . ."

Ninth Circuit precedent therefore appears to foreclose the government's argument that Mr. Froude was in "custody" when he left Canada.

The Magistrate Judge's treatment of this issue simply conflated the question of whether Mr. Froude was in custody with the question of whether the LTSO was part of his sentence. Magistrate Judge Order, Docket No. 32, at 32. Moreover, the question under dual criminality is whether *the defendant's conduct* alleged in the Request for Extradition would be criminal in the requested state. *Id.* at 28 (citing *Man-Seok Choe v. Torres*, 525 F.3d 733, 737 (9th Cir. 2008)).

The error in reasoning in the decision below is that the Magistrate Judge relied on the *legal situation* in Canada – not the defendant's *conduct* – to determine that dual criminality had been met. Specifically, the Magistrate Judge relied on the legal ownership of the reentry center in which Mr. Froude had been located to make its determination. The facts of the legal ownership of the reentry center in Canada are simply irrelevant in the dual-criminality analysis, which looks to see whether the defendant's *conduct* would be criminal in the requested country. *Man-Seok Choe*, 525 F.3d at 737. Here, where someone had completed their term of imprisonment, and was then ordered into a reentry center – not imprisonment – during a post-imprisonment term of supervision, that person would not be in custody. *Burke, Burke*, 694 F.3d at 1065.

Unlike the situation in *United States v. Jones*, 569 F.2d 499 (9th Cir. 1978), which the Magistrate Judge relied upon, Mr. Froude had completed his prison sentence. On the same facts, here in the U.S., he would not have been in B.O.P. custody, because his sentence of imprisonment was complete, and he was on non-custodial supervision.

The government therefore fails to meet the dual-criminality requirement, for the reasons set out above and in the previous briefing.

### III. CONCLUSION

The Request for Certification should be denied. The Magistrate Judge's order certifying extradition should be vacated and reversed.

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

DATED: November 14, 2016    By */s/ Ashfaq Chowdhury*
ASHFAQ CHOWDHURY
Deputy Federal Public Defender

4