UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH WAYNE FROUDE,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>LOUIS MILUSNIC, WARDEN,<br><br>　　　　Respondent. | Case No. CV 16-05353 JLS<br><br>**ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS AND AFFIRMING MAGISTRATE JUDGE ORDER CERTIFYING EXTRADITABILITY** |

　　　This matter is before the Court on collateral review of the Magistrate Judge's Memorandum and Order Certifying Extraditability in the related case of *In the Matter of the Extradition of Kenneth Wayne Froude*, No. CV 15-8623-JLS(E), 2016 WL 3411551 (C.D. Cal. June 17, 2016) ("Extradition Order"). The matter is properly brought as a Petition for Habeas Corpus pursuant to 28 U.S.C. § 2241, and is fully briefed. As set forth below, the Court affirms the Extradition Order and dismisses with prejudice the Petition for Writ of Habeas Corpus.

**I.　　COLLATERAL REVIEW OF AN ORDER CERTIFYING EXTRADITABILITY**

　　　Extradition from the United States is a diplomatic process, initiated by a foreign nation that is party to a valid extradition treaty with the United States through a request to extradite an individual addressed to the United States Department of State.

*Manta v. Chertoff*, 518 F.3d 1134, 1140 (9th Cir. 2008); *Prasoprat v. Benov*, 421 F.3d 1009, 1012 (9th Cir. 2005). "After the request has been evaluated by the State Department to determine whether it is within the scope of the relevant extradition treaty, a United States Attorney . . . files a complaint in federal district court seeking an arrest warrant for the person sought to be extradited." *Blaxland v. Commonwealth Dir. of Pub. Prosecutions*, 323 F.3d 1198, 1207 (9th Cir. 2003). In response, "[a] judge or magistrate judge [holds] an extradition hearing to determine if the evidence is sufficient to sustain the charge of extradition under the relevant treaty." *Manta*, 518 F.3d at 1140 (citation omitted).

The United States Government (on behalf of the requesting country) bears the burden of submitting evidence that is "sufficient to sustain the charge [of criminality] under the provisions of the proper treaty or convention." 18 U.S.C. § 3184.

"The interpretation of a treaty, like the interpretation of a statute, begins with its text." *Medellin v. Texas*, 552 U.S. 491, 506-07 (2008) (citation omitted); *accord Air France v. Saks*, 470 U.S. 392, 399 (1985) ("[I]t is our responsibility to give the specific words of the treaty a meaning consistent with the shared expectations of the contracting parties.") (citations omitted). "In choosing between conflicting interpretations of a treaty obligation, a narrow and restricted construction is to be avoided as not consonant with the principles deemed controlling in the interpretation of international agreements." *Factor v. Laubenheimer*, 290 U.S. 276, 293 (1933). In particular, extradition treaties must be liberally construed in favor of enforcement. *Santos v. Thomas*, 830 F.3d 987, 1041 (9th Cir. 2016) (en banc); *Factor*, 290 U.S. at 298 ("The surrender of a fugitive, duly charged in the country from which he has fled with a nonpolitical offense and one generally recognized as criminal at the place of asylum, involves no impairment of any legitimate public or private interest."). Liberal construction gives "effect the apparent intention of the parties to secure equality and reciprocity between them." *Id.* at 293. In construing a treaty, courts may consider the United States Executive Branch's views and the relevant foreign state's views

regarding its terms. *Patterson v. Wagner*, 785 F.3d 1277, 1282 (9th Cir. 2015).

Pursuant to this standard, in determining whether to order extradition, a magistrate judge considers (1) whether the crime is an extraditable offense under the subject treaty and (2) whether probable cause exists to sustain the charge. *Vo v. Benov*, 447 F.3d 1235, 1237 (9th Cir. 2006). If so, a certificate of extraditability is issued and forwarded to the Department of State, and the Secretary of State makes the ultimate decision on whether to surrender the individual to the requesting country. 18 U.S.C. §§ 3184 & 3186. Here, the Magistrate Judge issued a certificate of extraditability that permits, but does not compel, the Secretary of State to surrender Petitioner to Canadian officials. Petitioner seeks review of the Extradition Order.

Review of such an order is accomplished through the filing of a writ of habeas corpus pursuant to 21 U.S.C. § 2241. *Santos*, 830 F.3d at 991. This Court's "'review of an extradition order is limited to whether: (1) the extradition magistrate had jurisdiction over the individual sought, (2) the treaty was in force and the accused's alleged offense fell within the treaty's terms, and (3) there is 'any competent evidence' supporting the probable cause determination of the magistrate." *Id.* at 1001 (citations omitted).

## II. EXTRADITION TREATY BETWEEN THE UNITED STATES AND CANADA[1]

There is an extradition treaty between the United States of America and the Government of Canada that is in full force and effect. It is the Treaty on Extradition between the United States of America and Canada signed at Washington on December 3, 1971, as amended by: (1) an exchange of notes on June 28, 1974 and July 9, 1974, T.I.A.S. No. 8237, 27 U.S.T. 983, 1976 WL 166697; (2) the Protocol Signed at Ottawa on January 11, 1988, Amending the Treaty, etc., which entered into force on November 26, 1991, 27 I.L.M. 423; and (3) the Second Protocol Amending the Treaty

---

[1] The relevant Treaty is attached to the Request for Extradition in the related case. (*See* Case CV 15-8623 JLS(E), Doc. 1-3 at 7-44.)

3

on Extradition Between the Government of the United States of America and the Government of Canada, signed at Ottawa on January 12, 2001, which entered into force on April 30, 2003 (collectively, "Treaty").

For persons already convicted, the Treaty requires that requests for extradition be accompanied by the judgment of conviction and sentence, along with a statement of how much of the sentence has not been served. (Treaty, Art. 9 ¶ 4.) The Treaty provides that "[a] person extradited under the present Treaty shall not be detained, tried or punished in the territory of the requesting State for an offense other than that for which extradition has been granted. . . ." (Treaty, Art. 12, ¶ 1, Doc. 1-3 at 34.) This provision implicates the "rule of specialty," which requires the Court to determine the propriety of each alleged ground for extradition because the extradited individual may be prosecuted only on the extraditable charges. *See United States v. Van Cauwenberghe*, 827 F.2d 424, 428 (9th Cir. 1987); *Caplan v. Vokes*, 649 F.2d 1336, 1343 (9th Cir. 1981). Therefore, with respect to each of the asserted grounds for extradition, the Court must determine whether the offense is extraditable under the terms of the Treaty and whether probable cause exists to sustain the charge. *See Prasoprat*, 421 F.3d at 1012.

For an offense to be extraditable, it must meet the "dual criminality requirement," that is, it must be criminal in both countries. *In the Matter of the Extradition of Russell*, 789 F.2d 801, 803 (9th Cir. 1986) (citation omitted). "Dual criminality exists if the 'essential character' of the acts criminalized by the laws of each country are the same and the laws are 'substantially analogous.'" *Manta*, 518 F.3d at 1141. In determining whether dual criminality exists, the Court must consider "the totality of the conduct alleged." *Man-Seok Choe v. Torres*, 525 F.3d 733, 737 (9th Cir. 2008) (citations omitted). Neither the names nor the elements of the offenses need be identical. *Id.*; *Manta*, 518 F.3d at 1141.

### III. ORDER CERTIFYING EXTRADITABILITY

The Magistrate Judge issued the underlying Extradition Order on June 17, 2016.

Petitioner does not challenge the factual findings set forth therein, which the Court incorporates here and summarizes briefly below. Extradition Order at *3-6.

Related to offenses committed in 2004, and after a jury trial in Canada, Petitioner was convicted on March 9, 2006, of one count of breaking and entering with the intent to commit sexual battery, one count of sexual assault using a weapon, and one count of uttering threats to cause bodily harm. *Id.* at *3. On May 16, 2008, Petitioner was ordered to serve thirty months in prison to be followed by a term of long-term supervision of ten years. *Id.* at *4.

Petitioner served his prison term, and then commenced service of long-term supervision pursuant to a Long-Term Supervision Order ("LTSO") on November 12, 2010. *Id.* The LTSO expressly required Petitioner to reside at a Community Correctional Centre or a Community-Based Residential Facility ("CCC") approved by the Correctional Service of Canada ("CSC"). *Id.* By regulation, Petitioner was also required to "remain at all times in Canada within the territorial boundaries fixed by the parole supervisor" and "obey the law and keep the peace." *Id.*

Petitioner's failure to report to the CCC, together with a conviction and prison sentence on a subsequent conviction delayed the start of Petitioner's residence at the CCC to January 28, 2013. *Id.* at *5. A few months later, on May 18, 2013, Petitioner absconded. *Id.* He was eventually found in the United States, and the government of Canada requested extradition. *Id.* at *1.

In discussing the "rule of specialty," the Magistrate Judge certified extradition on three of the four grounds for extradition presented by the Government. *Id.* at *10-11. Specifically, the Extradition Order certified extradition for the completion of Petitioner's long-term supervision, for Petitioner's failure to reside at a CCC, and for the failure to remain at all times within Canada within the territorial boundaries fixed by the parole supervisor. *Id.* at *6-13. The Magistrate Judge declined to certify extradition based on Petitioner's failure to "obey the law and keep the peace," noting that this charge is "vague and generalized," and that certification on this ground

"would effectively eviscerate the dual criminality requirement embodied in the Treaty." *Id.* at *14. The Government has abandoned this basis for extradition. (Opp. at 3 n.3, Doc. 7.)

## IV.   PRESENT PETITION FOR WRIT OF HABEAS CORPUS

On collateral review, Petitioner challenges only two aspects of the Magistrate Judge's extradition order, namely, his interpretation of the term "sentence" under the Treaty, and his determination that dual criminality has been met. Specifically, Petitioner contends that (1) long-term supervision was not imposed as a "sentence" in the judgment of conviction and is not a "sentence" within the terms of the Treaty or Canadian law; therefore, he cannot be extradited to serve his remaining long-term supervision; and (2) Petitioner's alleged violations of the terms of his long-term supervision are not crimes in the United States, and therefore he cannot be extradited for those alleged violations.

### A.   Petitioner May Be Extradited to Serve Out His Remaining Long-Term Supervision

The Magistrate Judge's Extradition Order contains a thorough analysis as to why long-term supervision was a part of Petitioner's sentence and as to why it is properly considered part of a sentence under the Treaty. This Court adopts the Magistrate Judge's well-reasoned opinion and concludes that the Treaty authorizes Petitioner's extradition to Canada for the purpose of serving the remaining term of his "sentence" of long-term supervision.

### B.   The Dual Criminality Requirement Has Been Satisfied Based on Two Alleged Violations of Petitioner's Long Term Supervision

#### 1.   Petitioner May Be Extradited Based on His Failure to Reside at a Community Correction Centre Approved by the Correction Service of Canada

Petitioner argues that the dual criminality requirement has not been met as to this ground for extradition. (Petition at 8-10.) The Government contends that

Petitioner is charged with a violation of the LTSO that is analogous to a federal criminal prohibition on escape from custody in the United States. (Opp. at 5-7 (citing 18 U.S.C. § 751).) Petitioner argues that this prohibition is not analogous because he was not "in custody" at the time he entered the United States. (Petitioner at 8-10.) Again, the Court agrees with the Magistrate Judge's analysis.

Section 751(a) criminalizes escape or attempted escape from custody:

> (a) Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate judge, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall [be subject to fine and/or imprisonment].

18 U.S.C. § 751(a).

Petitioner argues that § 751 does not apply to residential facilities or "half-way houses." (Petition at 8-9.) Petitioner relies on *United States v. Jones*, 569 F.2d 499 (9th Cir. 1978), *United States v. Keller*, 912 F.2d 1058 (9th Cir. 1990), and *United States v. Burke*, 694 F.3d 1062 (9th Cir. 2012). However, when these cases are read together, they do not support Petitioner's argument. Instead, the manner in which *Burke* distinguishes *Keller* and *Jones*, applied to the present record, establishes that the dual criminality requirement has been met in this instance.

Specifically, in determining whether a defendant was "in custody" for purposes of § 751, courts look to whether the defendant was committed to the custody of the Bureau of Prisons ("BOP")[2] at the time he absconded. *See Burke*, 694 F.3d at 1065.

---

[2] Persons in the custody of the BOP are in "the custody of the Attorney General or his authorized representative." 18 U.S.C. § 751(a); *United States v. Rocha-Leon*, 187 F.3d 1157, 1159 (9th Cir. 1999).

Thus, if at the time Petitioner absconded, he was committed to an institution or officer that is analogous to the United States BOP, then by absconding, he committed a crime analogous to escape in violation of § 751(a), and the dual criminality requirement under the Treaty has been met.

The BOP administers federal correctional institutions in the United States. 18 U.S.C. §§ 4041-4042. The CSC performs the same function in Canada. (*See* Glenn Decl. ¶ 3, CV 15-8623-JLS(E), Doc. 28-1.) The CCC at which Petitioner resided is operated by the CSC. *Id.* ¶ 4. Petitioner's conduct while at the facility was heavily regulated. (*See* Glenn Decl. ¶¶ 6-10 & Exs. A-E.) Moreover, at the time Petitioner absconded, he was not permitted to leave the facility on his own. (Glenn Decl. ¶ 9.) These facts support a conclusion that Petitioner was in the custody of the CSC at the time he absconded.

The Ninth Circuit in *Jones* held that "[a] federal prisoner participating in a pre-release or half-way house program by designation of the Attorney General commits an escape when he willfully violates the terms of his extended confinement." *Jones*, 569 F.2d at 500. Relatedly, another statute, 18 U.S.C. § 4082(a), criminalizes "[t]he willful failure of a prisoner . . . to return within the time prescribed to an institution or facility designated by the Attorney General." 18 U.S.C. § 4082(a); *see Jones*, 569 F.2d at 500 (reading § 751 with § 4082(a) and concluding that the failure to return from a "half-way house" constituted an escape prohibited by § 751).). Here, (1) Petitioner was under the control of the Correction Service of Canada during his residence at the Community Correction Centre under the terms of the LTSO, (2) his movement was severely restricted, (3) his conduct while residing at the CCC was heavily regulated, and (4) he was not permitted to leave the facility on his own. On this record, the Court concludes that Petitioner was in the custody of the Canadian analog of the United States BOP, and by leaving the facility without authorization, committed criminal conduct that would be punishable in the United States as escape in violation of § 751. Thus, the dual criminality provision has been met, and Petitioner

8

may be extradited based on his failure to reside at a CCC approved by the CSC.

### 2. Petitioner May Be Extradited Based on His Failure to Remain in Canada Within the Territorial Boundaries Fixed by the Parole Supervisor

Petitioner argues that the dual criminality requirement has not been met as to this ground for extradition. (Petition at 16-17.) The Government contends that Petitioner is charged with a violation of the Criminal Code of Canada, § 753.3(a), that is analogous to the federal criminal prohibition on fleeing to avoid custody or confinement after conviction. (Opp. at 7-9 (citing 18 U.S.C. § 1073).) Petitioner argues that this prohibition is not analogous because he lacked the requisite intent to avoid prosecution, custody, or confinement when he absconded. (Petition at 16-17.)

Section 1073 criminalizes flight with the intent to avoid custody or confinement after conviction:

> Whoever moves or travels in interstate or foreign commerce with intent either (1) to avoid prosecution, or custody or confinement after conviction, under the laws of the place from which he flees, for a crime, or an attempt to commit a crime, . . . which is a felony under the laws of the place from which the fugitive flees, . . . shall be [subject to fine and/or imprisonment].

18 U.S.C. § 1073.

Notably, Petitioner is not challenging the Magistrate Judge's factual finding regarding his subjective intent in leaving the CCC and fleeing Canada. *See* Extradition Order at *13. Rather, Petitioner argues that his custodial sentence had already been served, and therefore his flight cannot fall within the scope of § 1073; i.e., he could not have intended to avoid "custody or confinement." (Petition at 16-17.) This argument, too, depends upon a determination that the LTSO was not part of his "sentence," and the requirement that he live at the CCC did not constitute "custody

9

or confinement." (Petition at 6-8, 13-14.) For the reasons stated previously, the Court rejects this argument. The Magistrate Judge made a supported factual finding that Petitioner fled Canada with the intent of avoiding the requirement that he continue to reside at the CCC under the terms of the LTSO. Extradition Order at *13. As explained above, the requirement that he reside at the CCC constitutes custodial confinement by the CSC. As such, his flight falls within the criminal prohibition of § 1073, the dual criminality provision is met, and Petitioner may be extradited on this ground.

## V. CONCLUSION

Because the Court finds that the Magistrate Judge properly certified Petitioner's extraditability on three grounds, the Court DENIES the Petition for Writ of Habeas Corpus.

This Order is appealable as a final order pursuant to 28 U.S.C. § 1291. Unlike other habeas corpus proceedings, no certificate of appealability is required for an appellate court to review a final order in a § 2241 proceeding. *See Prasoprat*, 421 F.3d at 1013. Therefore, Petitioner is directed to Federal Rule of Appellate Procedure 4(a), which sets forth time limitations for the filing of an appeal.

**IT IS SO ORDERED.**

**DATED:** August 3, 2017

_____
The Hon. Josephine L. Staton
United States District Judge