SANDRA R. BROWN
Acting United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
JOHN J. LULEJIAN (Cal. Bar No. 186783)
NATHANIEL B. WALKER (Cal. Bar No. 224473)
Assistant United States Attorneys
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0721
                (951) 276-6919
     Facsimile: (213) 894-0141
                (951) 276-6202
     E-mail:    John.Lulejian@usdoj.gov
                Nathaniel.Walker@usdoj.gov

Attorneys for Respondent
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| KENNETH WAYNE FROUDE,<br><br>　　　　Petitioner,<br><br>　　　　　　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　Respondent. | No. CV 16-05353-JLS<br><br>GOVERNMENT'S OPPOSITION TO PETITIONER'S OPPOSED *EX PARTE* APPLICATION FOR STAY OF SURRENDER PENDING APPEAL |
|---|---|

　　　Respondent United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, hereby submits its Opposition to Petitioner's Opposed Ex Parte Application for Stay of Surrender Pending Appeal (Docket No. 16).

//
//
//
//

This Opposition is based upon the Memorandum of Points and Authorities attached hereto, the arguments and pleadings previously filed in this case, and such further evidence and argument as the Court may permit.

Dated: September 15, 2017        Respectfully submitted,

                                 SANDRA R. BROWN
                                 Acting United States Attorney

                                 LAWRENCE S. MIDDLETON
                                 Assistant United States Attorney
                                 Chief, Criminal Division


                                 */s John J. Lulejian*
                                 JOHN J. LULEJIAN
                                 NATHANIEL B. WALKER
                                 Assistant United States Attorneys

                                 Attorneys for Respondent
                                 UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

On August 3, 2017, this Court denied petitioner KENNETH WAYNE FROUDE's ("petitioner") petition for writ of habeas corpus, putting petitioner one-step closer to serving out the remainder of his sentence in Canada for breaking and entering with the intent to commit sexual battery, sexual assault using a weapon, and uttering threats to cause bodily harm. (See Docket No. 12.)[1] On August 10, 2017, petitioner filed his notice of appeal in an attempt to delay his return to Canada. (See Docket No. 14.) Over a month later, on September 14, 2017, petitioner filed an ex parte application seeking a stay of his surrender pending appeal. (See Docket No. 16.)

Because petitioner cannot show any likelihood of success on the merits of his claims or otherwise meet his burden of justifying a stay, the government respectfully requests that the Court deny petitioner's ex parte application.

**II. LEGAL STANDARD**

Although the power to stay an action is "part of [a court's] traditional equipment for the administration of justice," it is not a matter of right, "even if irreparable injury might otherwise result." Nken v. Holder, 556 U.S. 418, 421, 434 (2009) (quotation and citation omitted). While issuance of a stay is subject to the court's discretion, the court's judgment "is to be guided by sound legal principles." Id.

---

[1] Unless noted otherwise, citations to the docket refer to Case No. CV 16-05353-JLS, and are followed by the applicable document control numbers.

1

Although the issuance of a stay is dependent on the circumstances of the case, the party requesting a stay "bears the burden of showing that the circumstances justify an exercise of [the court's] discretion." Id. at 433-34. Before issuing a stay, a court must consider four factors:

> "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably harmed absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."

Id. at 434 (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)).

According to the Supreme Court, "[t]he first two factors of the traditional standard are the most critical." Id. The first factor, likelihood of success on the merits, requires the applicant to show at least "a substantial case for relief on the merits." Leiva-Perez v. Holder, 640 F.3d 962, 968 (9th Cir. 2011). The second factor requires an even stronger showing: the applicant must demonstrate that irreparable harm is "probable," or more likely than not, if the stay is denied. Id. The third and fourth factors, prejudice to the nonmoving party and the public interest, "merge when the Government is the opposing party." Nken, 556 U.S. at 435. Ultimately, the stay applicant must show that "irreparable harm is probable and either: (a) a strong likelihood of success on the merits and that the public interest does not weigh heavily against a stay; or (b) a substantial case on the merits and that the balance of hardships tips sharply in the [moving party's] favor." Leiva-Perez, 640 F.3d at 970.

The United States Court of Appeals for the Ninth Circuit has noted that these factors represent a more stringent standard for the party seeking a stay than previously required in the Ninth Circuit. Id. at 965. Specifically, whereas the earlier standard required showing of "the possibility of irreparable injury," id. at 964, the new test requires that the party seeking a stay demonstrate that "irreparable harm is probable if the stay is not granted." Id. at 968; see also id. at 965 (finding that Supreme Court "raised the minimum permissible showing of irreparable harm necessary to justify a stay" by holding "that if the petitioner has not made a certain threshold showing regarding irreparable harm . . . then a stay must not issue . . . .").

In an international extradition case such as this one, a court must "consider 'strongly' the public interest as an additional factor." Artukovic v. Rison, 784 F.2d 1354, 1355 (9th Cir. 1986) (quoting Lopez v. Heckler, 713 F.2d 1432, 1435 (9th Cir. 1983)). The public interest to be measured is not the personal interest of petitioner, but is the public interest in law enforcement and equal respect for the law as set forth in treaties between contracting countries – in this case, the United States and Canada.

The role of the government "does not make the public interest . . . negligible." Nken, 556 U.S. at 435. As the Supreme Court observed, although "there is a public interest in preventing [persons] from being wrongfully [surrendered]," that is no basis for assuming the "absence of harm to the public interest" if a stay is granted. Id. at 436. Additionally, as was true with the removal order at issue in Nken, there is "always" a public interest in prompt execution of surrender orders. Id. Therefore, "[a] court

3

asked to stay [surrender] cannot simply assume that ordinarily, the balance of hardships will weigh heavily in the applicant's favor." Id. (internal quotation and citation omitted).

**III. PETITIONER CANNOT MEET THE STANDARD FOR OBTAINING A STAY**

    **A.    PETITIONER HAS NOT DEMONSTRATED A LIKELIHOOD OF SUCCESS**

In his ex parte application for a stay, petitioner has made no showing whatsoever that he is likely to succeed on the merits of his appeal. Rather, petitioner simply states the issues that he intends to litigate on appeal are "complicated [and] involve questions of dual criminality requiring analysis of U.S. and Canadian law, and whether [he] may be extradited to serve out his remaining long-term supervision in Canada . . . ." (Docket No. 16, at 2, ¶ 2.) Moreover, as petitioner himself notes, this Court has twice ruled against him on these issues. (See id.) Thus, petitioner has failed to meet his burden of making a strong showing that he is likely to succeed on the merits of his appeal, and the Court should deny his request for a stay on this basis alone. See, e.g., Artukovic, 784 F.2d at 1356 (denying stay of extradition pending appeal where fugitive "has shown a possibility of irreparable injury, [but] he has shown no probability of success on appeal"); Demjanjuk v. Meese, 784 F.2d 1114, 1118 (D.C. Cir. 1986) (same). For the reasons set forth in the Court's order denying the habeas petition (Docket No. 12), petitioner's claims challenging the Court's certification of his extradition are without merit.

    **B.    PETITIONER CANNOT SHOW THAT HE WILL SUFFER IRREPARABLE HARM IF THE COURT DOES NOT GRANT THE STAY**

Petitioner is unable to demonstrate the necessary probability of irreparable harm if a stay is not granted. In his ex parte

4

application, petitioner asserts that he will be harmed because he "will lose his ability to potentially obtain relief from extradition through the appeal." (Docket No. 16, at 3, ¶ 5.) The Supreme Court has held that irreparable harm must be based on individualized circumstances. Nken, 556 U.S. at 433-34. An individualized assessment of whether petitioner would be irreparably harmed by losing the opportunity for judicial review of his claims logically depends on the likelihood of success on the merits of the claims. As demonstrated in the Court's order and the previous filings in this case, petitioner cannot succeed on those claims. Even if petitioner could show the probability of irreparable harm, that is not sufficient to justify a stay in the absence of a sufficient likelihood of success on the merits. See Artukovic, 784 F.2d at 1356; Demjanjuk, 784 F.2d at 1118.

**C. STAYING PETITIONER'S SURRENDER AND EXTRADITION WOULD CAUSE INJURY TO THE UNITED STATES AND WOULD BE CONTRARY TO THE PUBLIC INTEREST**

As explained above, when the government opposes a stay, the traditional factors of harm to the opposing party and weighing the public interest merge. See Nken, 556 U.S. at 435. In an international extradition case such as this one, the Court should "consider 'strongly' the public interest as an additional factor." Artukovic, 784 F.2d at 1355 (citation omitted). The Supreme Court has stated that "[t]he surrender of a fugitive, duly charged in the country from which he has fled with a nonpolitical offense and one generally recognized as criminal at the place of asylum, involves no impairment of any legitimate public or private interest." Factor v. Laubenheimer, 290 U.S. 276, 298 (1933). Rather, "the public

interest will be served by the United States complying with a valid extradition application . . . under the treaty, because compliance promotes relations between the two countries, and enhances efforts to establish an international rule of law and order." <u>Artukovic</u>, 784 F.2d at 1356.

A stay that causes unwarranted delay in the United States' fulfillment of its obligations to Canada will harm its credibility in the international arena and impair its ability to obtain the cooperation of foreign nations in bringing United States fugitives to justice. During the lengthy period between the denial of petitioner's habeas petition and his filing of an application for a stay, the Secretary of State, per his usual process for reviewing extradition requests, issued a surrender warrant for petitioner; therefore, the United States is prepared to effectuate petitioner's surrender back to Canada. Further delay in his surrender only will cause stress between the two nations.

Canada has done all that the extradition treaty and United States law require. Significant national interests may be harmed if petitioner is allowed to continue delaying his surrender by pursuing meritless claims.

**IV.   FEDERAL RULE OF APPELLATE PROCEDURE 23(A) DOES NOT BAR SURRENDER**

While petitioner is not entitled to a stay from this Court, as demonstrated above, denying the stay will not be the end of the inquiry. Following the resolution of the instant application, petitioner may try to seek a stay under Federal Rule of Appellate Procedure 8(a) from the Ninth Circuit, which also has jurisdiction

over petitioner.  Federal Rule of Appellate Procedure 23(a) is inapplicable.  That rule provides that

> [p]ending review of a decision in a habeas corpus proceeding commenced before a court, justice, or judge of the United States for the release of a prisoner, the person having custody of the prisoner must not transfer custody to another unless a transfer is directed in accordance with this rule.  When, upon application, a custodian shows the need for a transfer, the court, justice, or judge rendering the decision under review may authorize the transfer and substitute the successor custodian as a party.

Fed. R. App. P. 23(a).  This rule "'was designed to prevent prison officials from impeding a prisoner's attempt to obtain habeas corpus relief by physically removing the prisoner from the territorial jurisdiction of the court in which a habeas petition is pending.'" Qassim v. Bush, 466 F.3d 1073, 1078 (D.C. Cir. 2006) (citing Goodman v. Keohane, 663 F.2d 1044, 1047 (11th Cir. 1981)).

There is nothing in the legislative history or applicable case law that suggests that this rule was designed to prevent the surrender of a fugitive to the agent of a foreign government pursuant to 18 U.S.C. § 3186.  See id. ("[N]othing in the Rule [23] indicates a desire to extend it to situations where the United States (or a state) is transferring an individual out of federal or state custody entirely, and, as to Rule 23(a), we agree.") (quotation and citation omitted).  Indeed, the fact that numerous courts, including the Supreme Court, have routinely denied stays in international extradition cases while review of a habeas decision

remained pending suggests that the rule does not apply to such cases. See, e.g., Ye Gon v. Dyer, 137 S. Ct. 347 (2016); Gutierrez v. United States, 136 S. Ct. 998 (2016); Kin-Hong v. United States, 520 U.S. 1206 (1997); Assarsson v. United States, 102 S. Ct. 2950 (1982); Jimenez v. United States Dist. Ct., 84 S. Ct. 14 (1963) (Goldberg, J., in chambers); Artukovic, 784 F.2d at 1356; Quintanilla v. United States, 582 F. App'x 412, 415 (5th Cir. 2014) (per curiam); Perez v. Mims, No. 1:16-cv-01935-SKO HC, 2017 WL 374350, at *5 (E.D. Cal. Jan. 26, 2017).

This Court may likewise deny petitioner's stay application without addressing whether Rule 23(a) applies, let alone serves as a bar to surrender in petitioner's case. See Lindstrom v. Graber, 203 F.3d 470, 475 (7th Cir. 2000) (declining to decide whether Rule 23(a) violated when United States government surrendered petitioner to foreign government while both appeal of district court's denial of one habeas petition and second habeas petition remained pending). In the event that this Court denies his application, Rule 8(a) provides petitioner with the opportunity to seek a stay with the Ninth Circuit.

**V. CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny Petitioner's Opposed Ex Parte Application for Stay of Surrender Pending Appeal (Docket No. 16).